UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AIRA JEWELS, LLC,

                            Plaintiff,

-against-

MONDRIAN COLLECTION, LLC and
LISBETH SYLVAIN,

                            Defendants.

Case No. 1:23-cv-04510 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

      Aira Jewels, LLC ("Plaintiff" or "Aira Jewels") alleges that its former employee, Lisbeth Sylvain, breached a non-compete agreement when she quit her job to join Mondrian Collection, LLC (the "Collection" and, together with Sylvain, "Defendants"), with whom she used Plaintiff's trade secrets to poach customers. Defendants move to dismiss Plaintiff's complaint. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

### I. Factual Background[1]

      Aira Jewels, a New York limited-liability company, operates a family-run jewelry business in New York City with roughly five employees. Compl. ¶¶ 2, 7-8. It is a "disruptive" business that uses "proprietary sales, marketing, and display techniques developed through a decade of hard-won experience in a competitive industry." *Id.* ¶ 15; *see also id.* ¶ 16. Its employees have high-level access to this proprietary information, which includes "customer lists,

---

[1] The following facts are taken from the Complaint and assumed to be true for purposes of this motion. ECF No. 1 (the "Complaint" or "Compl."); *see New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 168 (2d Cir. 2023). The Court also considers documents attached to or otherwise incorporated into the Complaint. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

suppliers, sales strategies, marketing strategies, and operational techniques." *Id.* ¶ 18. Because they work in a small office, these employees also interact with customers and can see mail arriving in the office. *Id.* ¶ 20.

In August 2021, Aira Jewels hired Sylvain as a salesperson. *Id.* ¶ 17. As a condition of her employment, Sylvain was required to sign a confidentiality agreement with Aira Jewels, which she did on August 23, 2021. *Id.* ¶¶ 22, 25; *see* ECF No. 1-1 (the "Confidentiality Agreement"). In addition to requiring Sylvain not to disclose confidential information, the Confidentiality Agreement also provides that, for two years after its expiration or termination, Sylvain "shall not . . . directly or indirectly, engage in, own, be employed by, consult with, or otherwise render services to any Person who is engaged in any Competing Business." Confidentiality Agreement ¶ 12; *see id.* ¶ 1 (defining "Competing Business"); *id.* ¶ 3 (restricting use and disclosure of confidential information); Compl. ¶ 23.

Sylvain worked at Aira Jewels until August 2022, when she told her employers that she had accepted a job at Nike, Inc. ("Nike"). Compl. ¶¶ 28-29. Several months later, one of Plaintiff's principals ran into Sylvain, who said that she was enjoying her work at Nike. *Id.* ¶¶ 31-32. Sylvain never worked at Nike. *See id.* ¶¶ 29, 32. Instead, the Collection – a large luxury-jewelry brand incorporated in Massachusetts and with an office on Fifth Avenue in New York – had hired her as a salesperson while she was employed at Aira Jewels. *Id.* ¶¶ 10, 33, 36. Aira Jewels discovered the deception when its principals saw Sylvain representing the Collection at a trade show. *Id.* ¶ 34.

Since Sylvain's departure, Aira Jewels has noted an "unprecedented and steady drop in sales." *Id.* ¶ 44. One client implied in conversation that it is now working with Defendants. *Id.* ¶ 45. Aira Jewels also believes that many of its former clients are now working with Defendants.

*Id.* ¶ 46. Aira Jewels alleges that Defendants are using its proprietary information and strategies to poach its clients, *id.* ¶ 47, and that Sylvain is using proprietary knowledge she gained about Aira Jewels's customers and business strategies to benefit the Collection at Aira Jewels's expense, *id.* ¶ 48.

## II. Procedural History

Plaintiff sued Defendants on May 30, 2023. *See generally id.* Plaintiff asserts claims for breach of contract and fraudulent misrepresentation against Sylvain; claims for tortious interference with contract against the Collection; and, against both Defendants, claims for tortious interference with prospective economic advantage, misappropriation of trade secrets under federal and state law, and civil conspiracy. *Id.* ¶¶ 49-92.

On July 27, 2023, Defendants moved to dismiss the Complaint. ECF No. 17 ("Br."). Plaintiff opposed the motion on August 31, 2023. ECF No. 26 ("Opp."). Defendants replied to Plaintiff's opposition on September 14, 2023. ECF No. 27 ("Reply"). Defendants' motion to dismiss is thus fully briefed.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But a court shall not "accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Determining whether a complaint states a claim is "a

3

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Plaintiff alleges one federal-law claim, under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* (the "DTSA"), and six state-law claims. Compl. ¶¶ 49-92. Although Defendants challenge all of Plaintiff's claims and move to dismiss the Complaint in its entirety under Rule 12(b)(6), the Court first addresses the sole federal-law claim in this case, through which Plaintiff claims subject-matter jurisdiction. Br. at 6; *see* Compl. ¶¶ 11-12.

### I. DTSA Claim

The DTSA provides a federal cause of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). To state a claim for trade-secret misappropriation under this statute, a plaintiff must plausibly allege that "(i) it possessed a trade secret, and (ii) the defendant misappropriated the trade secret." *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022) (alterations adopted and citation omitted). Because "[t]he elements for a misappropriation claim under New York law are fundamentally the same" as for a DTSA claim, "[d]istrict courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (quoting *ExpertConnect, L.L.C. v. Fowler*, No. 18-cv-04828 (LGS), 2019 WL 3004161, at *4 n.1 (S.D.N.Y. July 10, 2019)); *see Zirvi v. Flatley*, 433 F. Supp. 3d 448, 464 n.11 (S.D.N.Y.) (same), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) (summary order).

Defendants challenge Plaintiff's federal trade-secret claim on the grounds that Plaintiff has failed to allege: (1) a federal nexus to interstate commerce; (2) Sylvain's access to a specific

trade secret; and (3) misappropriation of any purported trade secrets. Br. at 13-17. The Court finds the first two of these grounds persuasive and holds that Plaintiff has failed to state a claim under the DTSA.

### A. Federal Nexus

Plaintiff's DTSA claim fails because the Complaint alleges no nexus between interstate or foreign commerce and the alleged trade secrets. *See* 18 U.S.C. § 1836(b)(1) (providing a federal cause of action only for the misappropriation of trade secrets "related to a product or service used in, or intended for use in, interstate or foreign commerce"); *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 173 (E.D. Pa. 2017) (dismissing complaint for failing to allege a federal nexus). The Court acknowledges that little is needed to satisfy this "interstate commerce" requirement at the pleading stage. *See Kraus USA, Inc. v. Magarik*, No. 17-cv-06541 (ER), 2020 WL 2415670, at *7 (S.D.N.Y. May 12, 2020) (allegations that the plaintiff was a "nationally renowned" company and that its trade secrets were used in interstate commerce were sufficient to state a federal nexus under the DTSA); *Yager v. Vignieri*, No. 16-cv-09367 (DLC), 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017) (allegations that a doctor's patients came from across state lines was a sufficient nexus for interstate commerce).

However, the Complaint fails to clear even this low bar. Absent from the Complaint is *any* allegation supporting a nexus with interstate commerce, such as, for example, that Aira Jewels serves customers from across state lines or sources its products from outside of New York. On the contrary, Plaintiff refers to itself as a "small family jewelry business," with about five employees, housed in a "small office," with all transactions and services apparently occurring within the state. Compl. ¶¶ 4, 20. Aira Jewels counters in its brief, without citation, that its jewelry is a product used in, or intended for use in, interstate commerce. Opp. at 18. But the Complaint itself contains no such allegation, and "[i]t is axiomatic that a complaint cannot be

5

amended by [a brief filed] in opposition to a motion to dismiss." *Int'l Bhd. of Teamsters, Garage Emps. Loc. 272 Mgmt. Pension Fund v. Apple Inc.*, No. 23-cv-01867 (JLR), 2024 WL 475018, at *10 (S.D.N.Y. Feb. 7, 2024) (quoting *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 327 n.1 (S.D.N.Y. 2021)). Nor does the Collection's incorporation in Massachusetts – another point raised by Plaintiff in its brief without citation, *see* Opp. at 18-19 – suggest that the trade secrets allegedly misappropriated are "related to a product or service used in, or intended for use in, interstate or foreign commerce," 18 U.S.C. § 1836(b)(1). Plaintiff neither explains in its opposition brief nor states in its Complaint how a defendant's incorporation in another state renders *Plaintiff's* trade secrets related to interstate or foreign commerce. Without more, the Court cannot find that Plaintiff has plausibly pleaded a federal nexus.

  B. **Possession of Trade Secrets**

Plaintiff's DTSA claim also fails for the independent reason that Plaintiff does not adequately allege its possession of a trade secret. The DTSA defines a "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information" so long as "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from" its secrecy. *Id.* § 1839(3).

"While neither the New York Court of Appeals nor the United States Court of Appeals for the Second Circuit has expressly required trade secrets to be identified with any particular degree of specificity, it is evident that a 'vague and indefinite' piece of information cannot be protected as a trade secret." *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 422 (S.D.N.Y. 2021) (quoting *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017)). "[A]lthough there is no heightened pleading requirement on actions brought under the DTSA, . . . district courts in this circuit routinely require that plaintiffs plead their trade secrets

6

with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Catalyst Advisors*, 602 F. Supp. 3d at 672 (quoting *Zabit*, 540 F. Supp. 3d at 422); *accord ExpertConnect*, 2019 WL 3004161, at *4. "[T]he pleading standard set forth in *Twombly* and *Iqbal* requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value and measures taken to safeguard it to support an inference that the information qualifies as a trade secret." *Garvey v. Face of Beauty, LLC*, 634 F. Supp. 3d 84, 96 (S.D.N.Y. 2022) (citation omitted). Although "a DTSA plaintiff has no obligation to reveal its secrets in the complaint simply to prove that they exist," "that does not mean a party can get away with nebulous descriptions at the highest level of generality." *TRB Acquisitions LLC v. Yedid*, No. 20-cv-00552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (brackets and citations omitted). "To the contrary, a complaint that only claims general categories of information and data as trade secrets does not state a claim under the DTSA because it does not adequately put the defendant on sufficient notice of the contours of the claim for misappropriation." *Id.* (brackets, quotation marks, and citation omitted).[2]

Applying these standards, the Court concludes that Plaintiff fails to plausibly allege that it possessed a trade secret because the Complaint describes little more than general categories of information and data. Plaintiff identifies its trade secrets as simply "customer lists, client contacts, supplier contacts, sales, marketing, and business strategies." Compl. ¶ 75; *see id.* ¶ 18. This description of Plaintiff's trade secrets is too general to state a DTSA claim. *See, e.g.*,

---

[2] To the extent that a plaintiff bringing a DTSA claim cannot meet this standard without revealing the trade secrets, the plaintiff could seek leave to "file[] a description of the alleged trade secrets under seal." *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-cv-05540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018). Here, Plaintiff did not seek such leave.

*Garvey*, 634 F. Supp. 3d at 95, 98 (allegations of "trade secrets, including information about running a business, advertising and promotional strategies, a customer and supplier list, and pricing information that [the former employer] had acquired through great expense and labor" were insufficient to allege existence of a trade secret (quotation marks omitted)); *TRB Acquisitions*, 2021 WL 293122, at *2 (description of "core brand and marketing plan strategy" was "far too general to state a DTSA claim").  Aira Jewels "does not, for example, offer any particulars of how its strategies and plans function or any other basis for the Court to discern exactly what information it alleges [that Defendants] misappropriated, let alone whether that information is protectable."  *TRB Acquisitions*, 2021 WL 293122, at *2.

On this point, Plaintiff notes only that "courts have accepted relatively general descriptions of alleged secrets at the motion to dismiss stage."  Opp. at 19 (quoting *Ad Lightning Inc. v. Clean.io*, No. 19-cv-07367 (JPO), 2020 WL 4570047, at *2 (S.D.N.Y. Aug. 7, 2020)).  Yet the allegations in *Ad Lightning*, which "include[d] just enough information to put [the defendant] on notice of the claim," were far more specific than the allegations in the present Complaint.  2020 WL 4570047, at *2.  There, the plaintiff described the nature of its proprietary information, explaining that it "combines synthetic audiences with live log-level user data to watch its clients' ad inventories around the clock, looking for bad ads, suspicious behavior, and compliance violations."  *Id.*  The *Ad Lightning* plaintiff also alleged that its program "includes a reporting function that allows its publisher clients to send reports of bad ads directly to the suppliers who sent them, thereby enabling the suppliers to remove the bad ads moving forward."  *Id.*  By contrast, Aira Jewels lists only in the most general terms the confidential information in its possession.  It is the rare company that does not have the "customer lists, client contacts, supplier contacts, sales, marketing, and business strategies" for which Plaintiff claims trade

secrecy.  Compl. ¶ 75.  Were these abstract categories as pleaded in the Complaint sufficiently specific, Defendants would need to litigate a federal charge of trade-secret misappropriation with minimal context as to the trade secrets they allegedly misappropriated.  Without more details, Plaintiff's allegations do not give Defendants "fair notice" as to what the misappropriation allegations concern.  *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

Even if Plaintiff had alleged sufficiently specific categories of trade secrets to provide notice to Defendants, it has not pleaded information to suggest that its operational strategies derive "independent economic value . . . from not being generally known."  18 U.S.C. § 1839(3).  "As a general matter, and except where the alleged secret conveys a competitive advantage and cannot be readily duplicated from generally available information, 'marketing strategies[]' or 'mere knowledge of the intricacies of a business' do not rise to the level of a trade secret."  *Accenture LLP v. Trautman*, No. 21-cv-02409 (LJL), 2021 WL 6619331, at *9 (S.D.N.Y. June 8, 2021) (quoting *Marietta Corp. v. Fairhurst*, 754 N.Y.S.2d 62, 67 (3d Dep't 2003)).  At various points in the Complaint, Plaintiff refers to its "marketing strategies," "operational techniques," and "display techniques" as proprietary, but does not otherwise state what makes them so.  *See, e.g.*, Compl. ¶¶ 15, 18, 47, 75.  Plaintiff's conclusory statement that "[t]hese trade secrets have value because they . . . give Aira a competitive advantage" is insufficient.  *Id.* ¶ 77; *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  So is Plaintiff's assertion that Defendants "are using" these alleged trade secrets "to poach Aira's clients," without any detail as to how that information is being used.  Compl. ¶ 47.  That Plaintiff "developed" these unspecified techniques "through a decade of hard-won experience in a competitive industry," *id.* ¶ 15, without more,

9

does not distinguish Plaintiff's proprietary information from "mere knowledge of the intricacies of a business," *Accenture LLP*, 2021 WL 6619331, at *9 (citation omitted).

Plaintiff similarly fails to plead sufficient allegations to demonstrate that its "customer lists, client contacts, [and] supplier contacts" are trade secrets. Compl. ¶ 75. "The *sine qua non* of whether a customer list constitutes a trade secret lies in whether 'the customers are readily ascertainable outside the employer's business as prospective users or consumers of the employer's services or products,' or, by contrast, 'the customers are not known in the trade or are discoverable only by extraordinary efforts and the customers' patronage had been secured by years of effort and advertising effected by the expenditure of substantial time and money.'" *24 Seven, LLC v. Martinez*, No. 19-cv-07320 (VSB), 2021 WL 276654, at *7 (S.D.N.Y. Jan. 26, 2021) (brackets omitted) (quoting *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 216 (S.D.N.Y. 2013)). "Where it 'would be difficult to duplicate a customer list because it reflected individual customer preferences, trade secret protection should apply.'" *Id.* (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 46 (2d Cir. 1999)). "However, lists that contain information about customers are not trade secrets if they are little more than a compilation of publicly available information, such as contact information." *Catalyst Advisors*, 602 F. Supp. 3d at 674 (quotation marks and citation omitted). Plaintiff does not allege anything to suggest its lists of customer and supplier contacts deserve trade-secret status. On this point, the Complaint is decidedly bare: it describes neither the information included in these lists nor how Plaintiff acquired that information. In short, the pleading lacks any nonconclusory allegations that could demonstrate that its business contacts are trade secrets.

Plaintiff's Complaint stands in contrast to other cases where courts have found a protectable trade secret sufficiently pleaded. *See, e.g.*, *Kraus USA*, 2020 WL 2415670, at *5

(pleading "several specific categories of information that were misappropriated, including technical product specifications, information on upcoming designs, sales data, e-commerce data, and other commercially sensitive information including customer lists, vendor relationships, the identity of contractual counterparties, internal cost structure and operating expenses, and e-commerce knowledge" was sufficient; noting allegations that "vendor relationships required 'significant effort' to develop" and that the defendant "used the customer list to further his lighting business by building on [the plaintiff's] longstanding relationships with these retailers"); *Medidata Sols., Inc. v. Veeva Sys. Inc.*, No. 17-cv-00589 (LGS), 2018 WL 6173349, at *1, *3 (S.D.N.Y. Nov. 26, 2018) (allegations of "[c]linical trial software solutions," "[s]ales and marketing activities," and "[s]hort- and long-term business plans," with examples for each category, were sufficient); *Tesla Wall Sys., LLC v. Related Cos.*, No. 17-cv-05966 (JSR), 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017) (noting that the plaintiff's "highly specific" complaint "pleads numerous specific categories of information, such as 'technical data, internal pricing information, work product, research, engineering designs,' etc.").

Because Aira Jewels does not "nudge[]" its DTSA claim "across the line from conceivable to plausible," it is dismissed. *Twombly*, 550 U.S. at 570.[3]

## II. Supplemental Jurisdiction

A court "may decline to exercise supplemental jurisdiction over a claim . . . [once] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 107 (2d Cir. 2022) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed

---

[3] Given that the Complaint does not plausibly allege a federal nexus or the existence of a trade secret, the Court need not and does not address Defendants' alternative argument that Plaintiff fails to adequately allege misappropriation. *See* Br. at 15-17.

11

as well." (brackets and citation omitted)).  Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Here, because Plaintiff's only federal claim has been dismissed at an early stage of this litigation, the Court declines in its discretion to exercise supplemental jurisdiction over the remaining state law claims, which are dismissed without prejudice.

### III.    Leave to Amend

Plaintiff has requested leave to amend in the event of dismissal.  *See* Opp. at 21 n.6. When granting a motion to dismiss, "leave to amend at least once should normally be granted as a matter of course," and the Court grants such leave here.  *Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991).  Any amendment should comply with the pertinent Local and Individual Rules, including the Court's requirement that "[a]ny amended or corrected filing shall be filed with a redline showing all differences between the original and revised filing."  Rochon Indiv. R. 1(I).  Plaintiff is advised that it would do well to consider the rest of Defendants' motion to dismiss in drafting its Amended Complaint because opportunities to amend are not unlimited.

### CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 16.  If Plaintiff chooses to file an amended complaint, it shall do within 21 days from the date of this

Opinion and Order. If it does not do so by that date, the Court will direct the entry of final judgment.

Dated: March 25, 2024
      New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge